IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOHN L. BIRD and JACQUELINE G. BIRD,
his wife, individually and on
behalf of similarly situated
West Virginia citizens,

    Plaintiffs,

v.                                  Civil Action No. 5:14CV97
                                            (STAMP)

CHRIS TURNER, individually and
as an agent and/or employee
of Kenyon Energy, LLC,
Chesapeake Exploration, LLC,
Chesapeake Appalachia, LLC,
and/or CHK Utica, LLC,
KENYON ENERGY, LLC,
CHESAPEAKE EXPLORATION, LLC
CHESAPEAKE APPALACHIA, LLC,
CHK UTICA, LLC,
DEUTSCHE BANK TRUST COMPANY AMERICAS,
P. NATHAN BOWLES, JR., ESQ. and
JOHN DOES, and any John Doe
individually or any entity acting
in concert with these defendants,

    Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING MOTION TO REMAND,
DENYING IN PART AND GRANTING IN PART
MOTION TO STRIKE, OR IN THE ALTERNATIVE,
MOTION FOR LEAVE TO FILE A SURREPLY AND
SETTING FORTH BRIEFING SCHEDULE FOR PENDING MOTIONS**

I.    Procedural History

The plaintiffs, John L. Bird and Jacqueline G. Bird, filed this action in the Circuit Court of Hancock County, West Virginia on June 19, 2014. The plaintiffs' complaint alleges that the plaintiffs, and others within West Virginia that are similarly

situated, were subject to fraudulent common law liens in violation of West Virginia Code § 38-16-101. Further, the plaintiffs make claims against the defendants regarding: the unlawful practice of law, breach of fiduciary duties, intentional misrepresentation and fraud, negligent misrepresentation, creation of a cloud on title, slander of title, and civil conspiracy. The plaintiffs provided a lease to defendant Chesapeake Appalachia, LLC ("Chesapeake"), who then assigned the lease to defendant CHK Utica, LLC ("CHK Utica"). CHK Utica then entered a deed of trust using the lease as collateral to secure a loan. The plaintiffs then attempted to refinance their home which was denied. They then brought the current action.

The defendants jointly removed this action to this Court asserting that defendant P. Nathan Bowles, Jr., Esq. ("Bowles"), who is domiciled in West Virginia, was fraudulently joined to this action and thus diversity exists between the parties. Further, the defendants argue that they are entitled to removal based on the Class Action Fairness Act ("CAFA"). The plaintiffs then filed a motion to remand which was fully briefed. Thereafter, the defendants filed a motion to strike the plaintiffs' reply, or in the alternative, for leave to file a surreply. These matters are now ripe for review.[1]

---

[1]There are also two pending motions: CHK Utica and Chesapeake's motion to compel bilateral arbitration and the other defendants' motion to stay this case pending arbitration. The

## II. Facts

### A. Fraudulent Joinder

In their notice of removal, the defendants argue that Bowles was fraudulently joined in this action. The defendants assert specific arguments as to each claim the plaintiffs have raised and why Bowles is not liable under those claims. The plaintiffs address each of the defendants' arguments in their motion to remand and contend that Bowles has a legal interest in the outcome of this action. In response, the defendants argue that the case was properly removed pursuant to CAFA and the plaintiffs have not challenged that alternative basis for removal. Further, the defendants assert that their arguments for fraudulent joinder are soundly based. In reply, the plaintiffs address the CAFA requirements, argue that those requirements are not met, and reiterate their arguments against fraudulent joinder.

### B. CAFA

In their notice of removal, the defendants argue that the CAFA requirements have been met in this case. The defendants assert that minimal diversity is met as Bowles is the only non-diverse defendant. Further, the defendants contend that the numerosity requirement is met as the class, at a minimum, would encompass the West Virginia oil and gas leases described in Exhibit A, Schedule

---

briefing of those motions has been stayed pending this Court's decision on the motion to remand.

1 of the deed of trust ("the deed of trust"). ECF No. 1-4. Additionally, the defendants argue that the aggregate value of those leases exceeds $5,000,000.00 if a judgment is entered in favor of the plaintiffs which is based on the affidavit of Monty C. Mayfield. ECF No. 1-6.

In their response to the motion to remand, the defendants assert that this case was properly removed pursuant to CAFA because there is minimal diversity as only one defendant is not diverse from the plaintiffs. Further, even if not, the defendants contend that Bowles was fraudulently joined.

The plaintiffs argue in their reply that CAFA's numerosity and amount in controversy requirements have not been met. The plaintiffs assert that they are seeking relief for a much narrower class of plaintiffs who dealt with persons unauthorized to practice law, performed acts to create clouds on titles and fraudulent liens, and knew the damage that could result. Further, for the same reason, the plaintiffs contend that the $5,000,000.00 threshold is not met because the defendants based their amount in controversy on all West Virginia oil and gas leases. More specifically, the plaintiffs cite three examples of lessors they believe should not be considered in this Court's calculations.

C. <u>Motion to Strike</u>

The defendants then filed a motion to strike the plaintiffs' reply. The defendants assert that the plaintiffs' reply should be

stricken because the plaintiffs addressed CAFA in their reply but did not do so in their motion to remand. Thus, the defendants argue that the plaintiffs have incorrectly raised new arguments that the defendants were not able to address. In the alternative, the defendants request a deadline to file a surreply. The defendants filed a surreply as an exhibit.

In their surreply, the defendants argue that the class to be used for numerosity is the class defined in the complaint's class definition. The defendants assert that even when using the most specific definition in the complaint, this definition still includes all oil and gas leases used as collateral in the deed of trust, which exceeds 100. Additionally, the defendants argue that even if removing the three lessors that the plaintiffs argue should not be counted, the defendants still meet the 100 person requirement. Also, there were 343 leases pledged as collateral under the deed of trust and some of those leases have multiple lessors.

In response to the defendants' motion to strike, the plaintiffs refer this Court to the arguments made in their reply regarding the CAFA requirements. The plaintiffs also contend that the law cited by the defendants to support their motion to strike is inapplicable as it is based on the Federal Rules of Appellate Procedure rather than the Federal Rules of Civil Procedure.

Based on the analysis that follows, this Court finds that the plaintiffs' motion to remand is denied. Additionally, the defendants' motion to strike, or in the alternative, motion for leave to file surreply is denied in part and granted in part.

### III. Applicable Law

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter. 28 U.S.C. § 1441. CAFA confers original jurisdiction on district courts over class actions in which (1) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," 28 U.S.C. § 1332(d)(2); (2) "any member of a class of plaintiffs is a citizen of a State different from any defendant," id. § 1332(d)(2)(A); and (3) "there are 100 or more plaintiff class members," id. § 1332(d)(5)(B). West Virginia ex rel. McGraw v. CVS Pharm., Inc., 646 F.3d 169, 174 (4th Cir. 2011). "[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 554 (2014) (citations omitted).

## IV. Discussion

### A. Motion to Strike/Motion to File Surreply

The defendants argue that the plaintiffs' reply to the motion to remand should be stricken as the plaintiffs raised their CAFA arguments for the first time in that filing but had not raised it in the initial motion to remand. In the alternative, the defendants request leave to file a surreply.

The local rules of this Court state that a party should not file a surreply without first obtaining the permission of the court. L. R. Civ. P. 7.02(b)(4); Thomas v. Branch Banking & Trust Co., 443 F. Supp. 2d 806, 809 n.2 (N.D. W. Va. 2006). Generally, a surreply is permitted when a party seeks to respond to new material that an opposing party has introduced for the first time in its reply brief. Schwarzer, Tashima, & Wagstaffe, Federal Civil Procedure Before Trial 12:110 (The Rutter Group 2008). See also Khoury v. Meserve, 268 F. Supp. 2d 600, 605 (D. Md. 2003) ("Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."). If a court does not rely upon the new material raised in the opposing party's reply brief to reach its decision in a matter, then a surreply is superfluous and unnecessary. See e.g. EEOC v. LA Weight Loss, 509 F. Supp. 2d 527, 540 (D. Md. 2007) (denying the parties' motions to file surreplies because the court did not rely upon the new case law and evidence

7

in making its decision); First Penn-Pacific Life Ins. Co. v. Evans, 162 F. Supp. 2d 423, 430 (D. Md. 2001) (denying plaintiff leave to file a surreply "[s]ince the Court will not be considering the additional contentions advanced"). In those circumstances, a motion for leave to file a surreply should be denied.

In this case, the plaintiffs first raised specific CAFA arguments in their reply to the motion to remand. Thus, this case presents the typical scenario that would permit a surreply. Khoury v. Meserve, 268 F. Supp. 2d at 605 ("Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."). Additionally, this Court will rely on the new material raised by the defendants in its surreply to make the findings below. As such, the surreply was not superfluous. For those reasons, this Court finds that the defendants' motion to strike, or in the alternative, for leave to file a surreply, is denied in part as to the motion to strike, and granted in part as to the alternative motion for leave to file a surreply.

B. CAFA

The parties disagree as to whether the defendants have shown that the numerosity and amount in controversy requirements for

removal pursuant to CAFA are met in this action.[2] This Court will consider those arguments in turn.

1.  <u>Numerosity</u>

In this case, an affidavit completed by Monty C. Mayfield ("Mayfield"), a land supervisor for Chesapeake, was filed with the defendants' notice of removal. Mayfield states that he has reviewed the complaint, specifically paragraph 27, and has found that there are 343 oil and gas leases, including the plaintiffs' lease, that were pledged by CHK Utica pursuant to the deed of trust. Mayfield further avers that the number of lessors on those 343 oil and gas leases exceeds 100 different individuals or entities. This figure is used as support by the defendants for its assertion that the CAFA numerosity requirement is met.

The plaintiffs argue that the defendants' description of the proposed class is too broad. The plaintiffs assert that a more narrow definition is required that is focused on those whose cases involved "the complex facts of Mr. and Mrs. Bird's case". ECF No. 30 at 6. The plaintiffs cite lessors who they believe do not fit into the proposed class, such as the Congo Corporation which accounts for 32.1210 acres and a lease that has eight modifications of the standard lease document. The plaintiffs assert that the

---

[2]The parties do not disagree that the minimal diversity requirement is met. However, this Court will note here that minimal diversity is met as at least one of the plaintiffs and at least one of the named defendants are diverse from one another. 28 U.S.C. § 1332(d)(2)(A).

Congo Corporation therefore does not fall into the class as the class only includes persons who were unrepresented while negotiating the lease, were incorrectly paid, and were given incorrect information. The plaintiffs also cite a lease that was the subject of 4 Suns Ranch, LLC v. Buckeye Oil Producing Company, et al., 5:12CV110, which the plaintiffs state has been released and thus decreases Mayfield's numbers. Further, the plaintiffs cite Frances Juszczak and the Juszczak Development Company, Inc. ("the Juszczaks"), who are lessors on multiple leases. The plaintiffs contend that Mayfield's affidavit is unclear on how a person who is a lessor on multiple leases was counted. Given all of these alleged issues, the plaintiffs argue that Mayfield's affidavit is too vague to support a finding that the numerosity requirement is met.

CAFA "defines 'class members' to mean 'the persons (named or unnamed) who fall within the definition of the proposed or certified class,' § 1332(d)(1)(D)." Mississippi ex rel. Hood v. AU Optronics Corp., 134 S. Ct. 736, 742 (2014). District courts have found that "[t]here is nothing to indicate that the [above] reference [by the Hood court] to the definition of the proposed or certified class was unintentional." Stump v. Camp, No. CIV. A. 13-6739, 2014 WL 582813, at *5 (E.D. La. Feb. 13, 2014); see also McMullen v. Synchrony Bank, No. CV 14-1983, 2015 WL 632212, at *2 (D.D.C. Feb. 13, 2015) (citing the Hood numerosity language and

10

reviewing the plaintiff's given class definition); Fergerstrom v. PNC Bank, N.A., No. CIV. 13-00526 DKW, 2014 WL 1669101, at *9 (D. Haw. Apr. 25, 2014) ("when a class has not already been certified, CAFA jurisdiction is determined by the definition of the proposed plaintiff class"); Louisiana v. Zealandia Holding Co., No. CIV.A. 13-6724, 2014 WL 1378874, at *4 (E.D. La. Apr. 8, 2014) (citing the specific Hood language and finding that a more narrow approach is applied to a numerosity determination rather than the diversity determination under CAFA).

The above courts have interpreted this language narrowly given the following cannon: "when the statute's language is plain, the sole function of the courts-at least where disposition required by the text is not absurd-is to enforce it according to its terms." Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000) (internal quotations omitted, citations omitted). "The preeminent canon of statutory interpretation requires [the court] to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183 (2004) (citing Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253 (1992)).

Thus, pursuant to Hood, this Court must now review the plaintiff's proposed class definition and determine whether the defendant has provided sufficient evidence to support a finding, by

the preponderance of the evidence, that there are more than 100 persons in the proposed class.

The plaintiffs provide three possible class definitions in their complaint. ECF No. 1-1 at ¶ 27, 137, & 138. However, both parties focus on the definition provided in paragraph 27:

> The class of Plaintiffs of all other similarly situated West Virginia citizens, hereinafter "the Class", is comprised of all persons to, with, or about which the Defendants and/or their agents made representations; explained, negotiated and/or processed agreements relative to Plaintiffs' mineral rights; assigned, conveyed or encumbered said purported mineral rights; and recorded documents, creating public records relative to all of the above so as to: (1) cloud the titles of class members' property; (2) prevent the free alienation of Plaintiffs' real property thereby violating the Plaintiffs' constitutional rights; and (3) damaging class members generally.

Although the plaintiffs argue that this definition must be read with the entire complaint, Hood, as the law cites above, provides a more narrow required reading. However, this Court finds that the plaintiffs' reasons for wanting a broader reading are unfounded as the class definition appears to cover all of the allegations made against the defendants in the complaint.

The defendants have provided data concerning every lessor whose oil and gas lease was used as collateral in the deed of trust. ECF No. 1-4. The defendants assert that the use of this figure is correct because to be part of the proposed class definition, the plaintiff must be a lessor whose lease is present in that deed of trust and must have been processed by some of the

12

defendants relative to the plaintiffs' mineral rights.  Further, the defendants argue that all of these would be "encumbered" as used in the class definition.

The main issue between the parties therefore is whether or not the deed of trust provided by the defendants represents persons who fall into the three items listed at the end of the proposed class definition which the plaintiffs assert damaged those persons. However, this is something that would later come with discovery. As the defendants point out, the deed of trust provides the best option, at this time, for accessing who may fall within the proposed class definition.  Those persons are lessors who have dealt with the defendants in some way and have "assigned, conveyed or encumbered" their mineral rights.

As to the plaintiffs' arguments that the counting completed in the Mayfield affidavit may be incorrect, this Court finds that this argument does not support remand.  A cursory look at only the first eight pages of the names attached to the deed of trust reveals that there are 100 or more persons in the proposed class.  ECF No. 1-4 at 5-12.  This takes into account any (1) duplicate lessors and (2) lessors that do not appear to be individuals but rather are "entities" that may have been represented by separate counsel or may have been more sophisticated bargainers during the negotiation process.  <u>Visendi v. Bank of Am., N.A.</u>, 733 F.3d 863, 869 (9th Cir. 2013) (this Court, in its cursory count, only counted duplicate

13

lessors once as "the language of CAFA concerns 'persons,' not properties. 28 U.S.C. § 1332(d)(11)(B)(I)."). Thus, this Court cannot find that the plaintiffs' issues with the Mayfield affidavit are sound as to the numerosity requirement. Even without the three examples of lessors the plaintiffs assert should not be counted, the class size clearly encompasses more than 100 individuals. This requirement has thus been met by a preponderance of the evidence.

2. <u>Amount in Controversy</u>

For the same reasons as for the numerosity requirement, the plaintiffs argue that Mayfield's affidavit is too vague and that the defendants are construing the proposed class too broadly.

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." <u>Dart Cherokee</u>, 135 S. Ct. at 555. If the plaintiff contests the defendant's plausible allegation, however, removal will be proper "by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional amount." <u>Id.</u> at 553-54 (quoting 28 U.S.C. § 1446(c)(2)(B)(2011)).

The claims of individual class members may be aggregated to meet CAFA's $5,000,000.00 amount in controversy requirement. 28 U.S.C. § 1332(d)(6). The well-settled test in the United States Court of Appeals for the Fourth Circuit for calculating the amount in controversy is "'the pecuniary result to either party which [a]

14

judgment would produce.'" Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002) (quoting Gov't Employees Ins. Co. v. Lally, F.2d 568, 569 (4th Cir. 1964)).

In the Mayfield affidavit, Mayfield states that CHK Utica's interest in the leases at issue, based on pledged collateral, is 5342.64 acres. Mayfield avers that because of the relief sought by the plaintiffs, that the oil and gas leases of the plaintiffs be voided, the cost to CHK Utica to reacquire equivalent lease rights would exceed $5,000,000.00. Specifically, Mayfield states that the cost would be in excess of $935.87 per acre given current bonus payments and market conditions.

Unlike other cases where an average award may be difficult to calculate, in this case, it is reasonable to use an average recovery amount. Cf Thomack v. W. Virginia Univ. Hospitals, Inc., No. 1:13CV31, 2013 WL 5504444, at *4 (N.D. W. Va. Oct. 3, 2013) (distinguishing other cases where an average damages amount was used and finding that an average award amount could not be used given the fact that each plaintiff could have a much lower damages amount than the named plaintiff). The plaintiffs have requested as relief that the leases be voided and the defendants have provided an average amount per acre that would have to be paid to reacquire the same or similar leases.

The issue in this case is whether or not the defendants' 5342.64 acres figure should be used by this Court to calculate the

15

possible damages in this case and the amount in controversy. The plaintiffs' concern as to the Juszczaks is not applicable as to the amount in controversy calculation as the plaintiffs were only pointing to the fact that the Juszczaks should not have been counted multiple times as lessors in determining how many plaintiffs may be in the class. Thus, all of the Juszczaks' acreage would be accounted for in the calculation of the amount in controversy.

As to the Congo Corporation, this Court cannot find that its acreage should be discounted. Although the plaintiffs argue that because the Congo Corporation has what appears to be a more negotiated lease compared to the other lessors, this does not foreclose the chance that the Congo Corporation may fit into the proposed class as it may have dealt with the defendants in a situation that is similar to what allegedly happened to the plaintiffs. Simply having a different lease is not enough, at remand stage, to support a finding that the Congo Corporation does not fit into the proposed class.

Finally, as to the plaintiffs from the 4 Suns, even if the 340 acres is not included in the calculation of the amount in controversy, the amount in controversy would still be met by a preponderance of the evidence. The defendants have asserted that bonuses are being provided in the current market and that the $935.87 figure is exceeded, per acre, for equivalent oil and gas

leases as those involved in this action. Thus, even without the 4 Suns acreage, the preponderance of the evidence establishes that the amount in controversy exceeds $5,000,000.00 and removal pursuant to CAFA was therefore proper. See Dart Cherokee, 135 S. Ct. at 554 ("[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.") (citing S. Rep. No. 109-14, at 43 (2005) (CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant"); Chavis v. Fidelity Warranty Services, Inc., 415 F. Supp. 2d 620, n.6 (D.S.C. 2006) (citing the Senate Judiciary's recommendation "that 'a federal court should err in favor of exercising jurisdiction over a case if it is uncertain about whether the sum or value of an aggregated class action claim reaches $5,000,000.00") (quoting S. Rep. No. 109-14 at 42 (2005), 2005 U.S.C.C.A.N. 3, 40).

Because this Court finds that the CAFA requirements for removal are met, it need not consider, for purposes of this motion to remand, the defendants' contentions regarding fraudulent joinder.[3] Moreover, the plaintiffs' request for attorneys' fees

---

[3]This Court also notes that it did not consider any of the exceptions to CAFA jurisdiction as none were raised by the plaintiffs and the plaintiffs bear the burden of raising such claims. "[T]he objecting party bears the burden of proof as to the applicability of any express statutory exception," which includes an exception to CAFA jurisdiction. Allen v. Boeing Co., 784 F.3d 625, 628 (9th Cir. 2015); see also Breur v. Jim's Concrete of

17

and costs is denied as this Court has found a basis for removal and remand is not required.

V. Conclusion

For the reasons stated above, the plaintiffs' motion to remand is DENIED. The defendants' motion to strike, or in the alternative, motion for leave to file a surreply is DENIED IN PART and GRANTED IN PART. The Clerk of Court is therefore DIRECTED to file the defendants' surreply. ECF No. 32-3.

Additionally, this Court had previously stayed the briefing of two pending motions, CHK Utica and Chesapeake's motion to compel bilateral arbitration and the other defendants' motion to stay pending arbitration, until after this Court had disposed of the plaintiffs' motion to remand. Thus, those motions are now ready to be briefed.

Accordingly, the plaintiffs are DIRECTED to file a response to those motions, if necessary, on or before **June 11, 2015**. The defendants are DIRECTED to file a reply, if necessary, on or before **June 18, 2015**.

---

Brevard, Inc., 538 U.S. 691, 698 (2003); Woods v. Standard Ins. Co., 771 F.3d 1257, 1262 (10th Cir. 2014); Williams v. Homeland Ins. Co. of N.Y., 657 F.3d 287, 290 (5th Cir. 2011); Westerfeld v. Indep. Processing, LLC, 621 F.3d 819, 823 (8th Cir. 2010); Kaufman v. Allstate New Jersey Ins. Co., 561 F.3d 144, 154 (3d Cir. 2009); Greenwich Fin. Servs. Distressed Mortgage Fund 3 LLC v. Countrywide Fin. Corp., 603 F.3d 23, 26 (2d Cir. 2010); In re Hannaford Bros. Co. Customer Data Sec. Breach Litig., 564 F.3d 75, 78 (1st Cir. 2009); Evans v. Walter Indus., Inc., 449 F.3d 1159, 1165 (11th Cir. 2006); Hart v. FedEx Ground Package Sys. Inc., 457 F.3d 675, 680 (7th Cir. 2006).

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     May 29, 2015

                                        /s/ Frederick P. Stamp, Jr.
                                        FREDERICK P. STAMP, JR.
                                        UNITED STATES DISTRICT JUDGE