IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


JOHN L. BIRD and JACQUELINE G. BIRD,
his wife, individually and on behalf
of similarly situated West Virginia
citizens,

       Plaintiffs,

v.                            Civil Action No. 5:14CV97
                                          (STAMP)
CHRIS TURNER, individually and
as an agent and/or employee of
Kenyon Energy, LLC,
Chesapeake Exploration, LLC,
Chesapeake Appalachia, LLC,
and/or CHK Utica, LLC,
KENYON ENERGY, LLC,
CHESAPEAKE EXPLORATION, LLC
CHESAPEAKE APPALACHIA, LLC,
CHK UTICA, LLC,
DEUTSCHE BANK TRUST COMPANY AMERICAS,
P. NATHAN BOWLES, JR., ESQ. and
JOHN DOES and any John Doe individually
or any entity acting in concert with
these defendants,

       Defendants.


## MEMORANDUM OPINION AND ORDER
### GRANTING DEFENDANTS CHESAPEAKE APPALACHIA, LLC AND CHK UTICA, LLC'S MOTION FOR LEAVE TO FILE EXCESS PAGES AND MOTION TO COMPEL BILATERAL ARBITRATION, DENYING PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' MOTION FOR LEAVE TO FILE EXCESS PAGES AND GRANTING DEFENDANTS CHESAPEAKE EXPLORATION, LLC, DEUTSCHE BANK TRUST COMPANY AMERICAS, P. NATHAN BOWLES, JR., ESQ., CHRIS TURNER AND KENYON ENERGY, LLC'S MOTION FOR STAY PENDING ARBITRATION

I.  Background

    In June 2011, the plaintiffs, John L. Bird and Jacqueline G.

Bird, executed a lease to defendant Chesapeake Appalachia, LLC

("Chesapeake") for oil and gas rights. The lease contained an arbitration agreement. Chesapeake assigned a portion of the lease to CHK Utica, LLC ("CHK"). CHK then entered into a deed of trust using the lease as collateral to secure a loan with defendants Deutsche Bank Trust Company Americas and appointing P. Nathan Bowles, Jr., Esq. as trustee. When the plaintiffs attempted to refinance their home, their application was denied because the deed of trust constituted a lien on the property.

The plaintiffs filed this action in the Circuit Court of Hancock County, West Virginia on June 19, 2014. The plaintiffs' complaint alleges that the plaintiffs and others within West Virginia that are similarly situated were subject to fraudulent common law liens in violation of West Virginia Code § 38-16-101. The plaintiffs also alleged claims regarding the unlawful practice of law, breach of fiduciary duties, intentional misrepresentation and fraud, negligent misrepresentation, creation of a cloud on title, slander of title, and civil conspiracy.

Chesapeake and CHK (collectively "arbitration defendants") filed a motion to compel bilateral arbitration under the lease's arbitration agreement and Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14. Defendants Chesapeake Exploration, LLC, Deutsche Bank Trust Company Americas, P. Nathan Bowles, Jr., Esq., Chris Turner, and Kenyon Energy, LLC filed a motion to stay this action pending that arbitration. Further, the arbitration

defendants moved to file a reply with excess pages to address the validity issues raised by the plaintiffs and a recent opinion from this Court. In response, the plaintiffs filed a motion to strike the arbitration defendants' motion to file a reply with excess pages. All of these motions are now ripe for review.

In their motion to compel bilateral arbitration, the arbitration defendants assert that the FAA applies, that the plaintiffs' claims fall within the arbitration agreement, that the arbitration agreement is enforceable under West Virginia law, and that the parties only consented to bilateral rather than class arbitration.

In response, the plaintiffs contest the arbitration defendants' claims, argue that validity and enforceability must be reviewed by this Court, and assert that there are several problems with the arbitration agreement that make it invalid.

In response to the plaintiffs' assertions that the arbitration agreement is unenforceable, the arbitration defendants moved to exceed the page limit in their reply as the arbitration defendants had not covered unconscionability in their initial motion and sought to address a recent decision in this district bearing on this case. The plaintiffs' motion to strike, they argue that this motion to exceed the page limit should be stricken.

## II.  Discussion

### A.  Motion to File Excess Pages

The arbitration defendants moved this court, under Local Rules 7.02(a) and 7.02(b)(2), for leave to file excess pages in reply to the plaintiffs' response to the motion to compel bilateral arbitration.  In support of their motion, the arbitration defendants state that the plaintiffs raised new issues regarding the arbitration agreement's validity.  The defendants also seek to discuss a recent, similar opinion issued by this Court.  For good cause shown, the defendants' motion for leave to file a memorandum of law in reply to the plaintiffs' response in excess of 15 pages is hereby GRANTED, and the plaintiffs' motion to strike the arbitration defendants' motion to file excess pages is DENIED.

### B.  Motion to Compel Bilateral Arbitration

The Federal Arbitration Act applies to "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . ."  9 U.S.C. § 2.  When a party seeks enforcement of an arbitration agreement during proceedings in a district court, a party sufficiently "invoke[s] the full spectrum of remedies under the FAA."  Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 710 (4th Cir. 2001).

To compel arbitration under the FAA, the law of the United States Court of Appeals for the Fourth Circuit provides that a moving party must "demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) failure, neglect, or refusal of the [opposing party] to arbitrate the dispute." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002) (citing Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)). Further, while federal law determines the arbitrability of issues, "[w]hether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." Id. at 501 (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).

As the parties have a dispute and the existence of the arbitration agreement is not at issue, this Court is left to determine whether the FAA applies, whether the arbitration agreement is enforceable, and whether this dispute is arbitrable.

1.  Application of the FAA

The FAA applies to any "written provision in . . . a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. "[T]he term 'evidencing a transaction' requires only that the transaction in fact involved interstate commerce, not that the

parties contemplated it as such at the time of the agreement."
Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 697
(4th Cir. 2012) (citing Allied-Bruce Terminix Cos. v. Dobson, 513
U.S. 265, 281 (1995)). The FAA does not require the party moving
to compel arbitration to present specific evidence proving the
interstate nature of the transaction. Id. Moreover, this Court
"need not identify any specific effect upon interstate commerce, so
long as 'in the aggregate the economic activity in question would
represent a general practice . . . subject to federal control.'"
Id. at 697-98 (internal quotation marks omitted) (quoting Citizens
Bank v. Alafabco, Inc., 539 U.S. 52, 56-57 (2003)).

By its terms, the lease provided the arbitration defendants
the right to drill wells, build roads and processing facilities,
construct a pipeline, and dispose of waste. See ECF No. 1 Ex. D.
Moreover, the arbitration defendants note that the parties are
domiciled in different states and that the lease "concerns the
production of natural gas that will be necessarily transported in
interstate pipelines." ECF No. 24, at 6.

The plaintiffs assert that because their lease includes a
disposal provision,[1] an activity not involving interstate commerce,

---

[1]The plaintiffs state that their lease retained both the
conversion to storage and disposal provisions of the form lease.
See ECF No. 39, at 16-17. However, the addendum to the plaintiffs'
lease provides that the "premises shall not be used for the purpose
of gas storage as defined by the Federal Energy Regulatory
Commission." ECF No. 1 Ex. D.

the agreement does not evidence commerce.  The plaintiffs attempt to distinguish this case from Holmes v. Chesapeake Appalachia, LLC, No. 5:11CV123, 2012 WL 3647674 (N.D. W. Va. Aug. 23, 2012), an unpublished opinion wherein this Court concluded that a nearly identical oil and gas lease evidenced commerce.  Id. at *10.  The plaintiffs note that the Holmes lease did not include conversion to storage or disposal provisions, while the plaintiffs' lease does. However, assuming that storage and disposal activities do not involve interstate commerce (a generous assumption), the analysis does not end there.  This Court must look to the transaction as a whole, and not simply to what the parties contemplated at the time of the agreement.  Rota-McLarty, 700 F.3d at 697 (citing Allied-Bruce Terminix Cos., 513 U.S. at 281).  Based on the substance of the lease and the arbitration defendants' assertion that the lease was intended for the extraction of natural gas to be transported in interstate commerce, it is clear that the plaintiffs' lease "evidenc[es] a transaction involving commerce."  9 U.S.C. § 2. Therefore, this Court finds that the FAA applies to this arbitration agreement.

   3.   Enforceability of the Arbitration Agreement

   The plaintiffs argue that the arbitration agreement is unenforceable because it is unconscionable.[2]  As stated above,

_____

   [2]The plaintiffs also argue that the arbitration agreement is ambiguous such that it must be construed against the arbitration defendants, contributing to its unconscionability.  However, this

"[w]hether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." <u>Adkins</u>, 303 F.3d at 501. Thus, this Court must look to West Virginia contract law to determine whether the arbitration agreement is enforceable.

Under West Virginia law, a contract is unenforceable as unconscionable if some level of both procedural and substantive unconscionability are found, and the court must find a high degree of "inequities, improprieties, or unfairness" in both the procedure of the creation of the contract, and in the contents of the contract itself. <u>Brown v. Genesis Healthcare Corp.</u>, 729 S.E.2d 217, 226-27 (W. Va. 2012) (hereinafter "<u>Brown II</u>"). "[W]here a party alleges that the arbitration provision was unconscionable . . . the question of whether an arbitration provision was bargained for and valid is a matter of law for the court to determine by reference to the entire contract, the nature of the contracting parties, and the nature of the undertakings covered by the contract." Syl. Pt. 3, <u>State ex rel. Wells v. Matish</u>, 600 S.E.2d 583 (W. Va. 2004).

a.  <u>Procedural Unconscionability</u>

Procedural unconscionability refers to any "inequities, improprieties, or unfairness in the bargaining process and formation of the contract." <u>Brown II</u>, 729 S.E.2d at 227; <u>see also</u>

_____

Court fails to see the affect that ambiguity or a plaintiff-friendly construction would have upon unconscionability.

<u>Pingley v. Perfection Plus Turbo-Dry, L.L.C.</u>, 746 S.E.2d 544, 551 (W. Va. 2013). It requires an examination of certain inadequacies that, when viewed together, "result in a lack of a real and voluntary meeting of the minds of the parties." <u>Pingley</u>, 746 S.E.2d at 551 (quoting Syl. Pt. 17, <u>Brown v. Genesis Healthcare Corp. ("Brown I")</u>, 724 S.E.2d 250 (W. Va. 2011)). Those certain inadequacies include "the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." <u>Pingley</u>, 746 S.E.2d at 551 (quoting <u>Brown I</u>, 724 S.E.2d at syl. pt. 17).

The plaintiffs argue that the lease was a contract of adhesion because they lacked bargaining power and a meaningful opportunity to understand and affect the terms of the agreement. Specifically, the plaintiffs note that Chesapeake is a subsidiary of a large multi-billion dollar corporation that has entered into numerous oil and gas leases, that the plaintiffs lack sophistication to effectively negotiation or understand the terms of the lease, that the plaintiffs did not read the lease or understand what arbitration means, and that the lease was a contract of adhesion because the plaintiffs felt compelled to enter into the lease or risk losing their share of pooled royalties.

"A contract of adhesion is one drafted and imposed by a party of superior strength that leaves the subscribing party little or no opportunity to alter the substantive terms, and only the opportunity to adhere to the contract or reject it." Syl. pt. 18, Brown I, 724 S.E.2d 250. While Chesapeake drafted the lease and appears to have had superior legal and technical knowledge, the circumstances surrounding the lease indicate that the plaintiffs had a meaningful opportunity to understand and affect its terms. The plaintiffs' claims that they did not understand the terms of the lease, lacked bargaining power, and believed the lease to be a "take it or leave it agreement" are undermined by the fact that the parties signed an addendum to the form lease changing its substantive terms in the plaintiffs' favor. The addendum eliminated Chesapeake's storage rights and included a "hold harmless" provision indemnifying the plaintiffs, provisions protecting the plaintiffs' property from operation-related damages, and a requirement that Chesapeake cleanup and restore the property after ceasing operations. Most notably, the addendum increased the plaintiffs' royalty share from 1/8 (in the form lease) to 15% of pooled royalties. The addendum makes it clear that the plaintiffs had, and exercised, their opportunity to change the terms of the agreement in their favor. Thus, this Court finds that the plaintiffs failed to meet their burden of showing procedural unconscionability.

b.  <u>Substantive Unconscionability</u>

Although this Court has determined that the arbitration agreement is not procedurally unconscionable, for purposes of thoroughness, this Court will examine whether the arbitration agreement is substantively unconscionable.

Substantive unconscionability relates to "unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party." <u>Pingley</u>, 746 S.E.2d at 551 (quoting <u>Brown I</u>, 724 S.E.2d at syl. pt. 19). When assessing substantive unconscionability, the factors that a Court must analyze "vary with the content of the agreement." <u>Pingley</u>, 746 S.E.2d at 551 (internal citations omitted). Therefore, courts should "assess whether a contract provision is substantively unconscionable on a case-by-case basis." <u>Brown I</u>, 724 S.E.2d at 262.  Nonetheless, relevant factors to consider include "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." <u>Pingley</u>, 746 S.E.2d at 551; <u>see also</u> <u>Dan Ryan Builders, Inc. v. Nelson</u>, 737 S.E.2d 550 (W. Va. 2012); <u>Johnson Controls, Inc.</u>, 729 S.E.2d at 808.

The plaintiffs argue that the arbitration agreement is substantively unconscionable because it requires the parties to split the cost of arbitration and because arbitrators are

inherently biased in favor of large corporations like Chesapeake and its parent corporation.

First, as to fee splitting, in <u>Brown v. Genesis Healthcare Corp.</u>, 729 S.E.2d 217 (W. Va. 2012), the Supreme Court of Appeals of West Virginia noted that "when an agreement to arbitrate imposes high costs that might deter a litigant from pursuing a claim, a trial court may consider those costs in assessing whether the agreement is substantively unconscionable." <u>Id.</u> at 229 (internal quotation marks omitted). Moreover, "[i]t is not only the costs imposed on the claimant but the risk that the claimant may have to bear substantial costs that deters the exercise of constitutional right of due process." <u>Id.</u> (internal quotation marks omitted) (quoting <u>Armendariz v. Found. Health Psychcare Servs., Inc.</u>, 6 P.3d 669, 687 (Cal. 2000)). However, the party claiming prohibitive cost "bears the burden of showing the likelihood of incurring such costs." <u>Adkins</u>, 303 F.3d at 502 (internal quotation marks omitted) (quoting <u>Green Tree Fin. Corp.-Ala. v. Randolph</u>, 531 U.S. 79, 92 (2000)).

Here, the plaintiffs provided an affidavit from Vincent S. Gurrera, Esq. ("Gurrera"), co-counsel for the plaintiffs. Gurrera averred that he represented the plaintiffs in an arbitration before the American Arbitration Association ("AAA"), which required an initial $8,200.00 filing fee. The parties settled before arbitration, but the plaintiffs paid approximately $13,000.00 in

arbitration fees after receiving a $7,000.00 refund from the $20,000.00 paid prior to the settlement. ECF No. 39 Ex. H. Gurrera estimated that the total cost if the case were arbitrated would have been about $25,000.00. Id. However, this affidavit has no bearing on "the likelihood of incurring such costs" in <u>this</u> case. It does not indicate whether fees in that arbitration were split, what the plaintiffs' expected recovery was, or the difference between the fees and the settlement amount. Even if the costs outlined in Gurrera's affidavit were likely to be incurred, the plaintiffs have not provided any indication of their expected damages in this case such that this Court may consider whether the estimated costs of arbitration are so high as to deter the plaintiffs from pursuing arbitration. There is simply no way for this Court to evaluate the burden of splitting arbitration fees in this case.

Second, the plaintiffs speculate that the potential arbitrators in this case would be biased in favor of the arbitration defendants. The plaintiffs offer no evidence of even <u>potential</u> bias on the part of any <u>potential</u> arbitral panel. Moreover, the split-fee structure seems to negate any potential bias arising out of the parties' disparate financial means, as the arbitrators' fees will be paid equally by the parties. This Court "decline[s] to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling

to retain competent, conscientious[,] and impartial arbitrators."
Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 30 (1991)
(internal quotation marks omitted).

Therefore, this Court finds that the plaintiffs failed to meet
their burden of showing substantive unconscionability. Because the
arbitration agreement is not unconscionable and the plaintiffs have
raised no other contract defenses, this Court finds that the
arbitration agreement is enforceable.

4. <u>Arbitrability</u>

This Court must determine whether the parties' dispute is
arbitrable, that is, whether the dispute is within the scope of the
arbitration agreement. The plaintiffs argue that the arbitration
agreement is ambiguous as to its scope, and should be limited to
disagreements about the lease, payments, performance, or property
damage. The arbitration defendants maintain that the arbitration
agreement is unambiguous and broad enough to encompass this
dispute. The arbitration defendants further argue that the
arbitration agreement does not permit class arbitration.

a. <u>Scope of the Arbitration Agreement</u>

Federal policy generally takes a liberal stance in favor of
enforcing arbitration agreements. <u>See</u> <u>Adkins</u>, 303 F.3d at 500. In
determining whether an issue is arbitrable, courts must "resolve
'any doubts concerning the scope of arbitrable issues . . . in
favor of arbitration.'" <u>Hill v. PeopleSoft USA, Inc.</u>, 412 F.3d

14

540, 543 (4th Cir. 2005) (quoting <u>Moses H. Cone Mem'l Hosp. v.</u> <u>Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983)).

The plaintiffs argue that the arbitration agreement is ambiguous and must be interpreted against Chesapeake, its drafter. Under West Virginia law, contract language is considered ambiguous "when it is reasonably susceptible to more than one meaning in light of the surrounding circumstances and after applying the established rules of construction." <u>Williams v. Precision Coil,</u> <u>Inc.</u>, 458 S.E.2d 327, 342 n.23 (W. Va. 1995). Courts "should read [contract] provisions to avoid ambiguities and not torture the language to create them." <u>Payne v. Weston</u>, 466 S.E.2d 161, 166 (W. Va. 1995). As such, ambiguity does not result merely because the parties do not agree to the construction of the contract. <u>Lee v.</u> <u>Lee</u>, 721 S.E.2d 53, 56 (W. Va. 2011). Instead, the question as to whether a contract is ambiguous is a question of law to be determined by the courts. <u>Pilling v. Nationwide Mut. Fire Ins.</u> <u>Co.</u>, 500 S.E.2d 870, 872 (W. Va. 1997).

Here, the arbitration agreement provides as follows:

<u>ARBITRATION</u>. In the event of a disagreement between Lessor and Lessee concerning this Lease or the associated Order of Payment, performance thereunder, or damages caused by Lessee's operations, the resolution of all such disputes shall be determined by arbitration in accordance with the rules of the American Arbitration Association. Arbitration shall be the exclusive remedy and cover all disputes, including but not limited to, the formation, execution, validity and performance of the Lease and Order of Payment. All fees and costs shall be borne equally by Lessor and Lessee.

ECF No. 1 Ex. D.

This Court finds the language of the arbitration agreement to be unambiguous. The plain language of the second sentence clearly states that "[a]rbitration shall be the <u>exclusive</u> remedy and cover <u>all disputes</u>." <u>Id.</u> The plaintiffs argue that the first and second sentences conflict regarding which types of disputes are arbitrable. However, the specific types of disputes listed in the first sentence are logically contained in the "all disputes" language of the second sentence. Read together, the first sentence simply emphasizes that particular (and perhaps common) disputes are subject to arbitration along with all other disputes.

The plaintiffs also argue that the arbitration agreement is ambiguous when read along with the "no automatic forfeiture," "force majeure," and "severability" provisions. However the language in these provisions does not alter this Court's finding that the arbitration agreement is unambiguous.

The plaintiffs rely on <u>State ex rel. Richmond Homes of W. Va., Inc. v. Sanders</u>, 717 S.E.2d 909 (W. Va. 2011). That case involved a home purchasing agreement containing an arbitration agreement. <u>Id.</u> at 913. Various substantive provisions in the agreement referenced "court action" and "civil action." <u>Id.</u> at 924. The court noted that the contract "plainly intimate[d] at least five times that a plaintiff retain[ed] the right to bring a civil action in a courtroom before a judge, and absolutely muddle[d] the

16

language that followe[d] stating that the plaintiff . . . must only pursue a remedy before an arbitrator." Id. The court concluded that the arbitration agreement's scope was therefore ambiguous and should be construed against the drafting party. Id.

This case is distinguishable from Richmond Homes in that the "no automatic forfeiture," "force majeure," and "severability" provisions do not "plainly intimate[] . . . that the plaintiff[s] retain[] the right to bring a civil action." Id. Rather, these provisions do not provide any rights to either party concerning the forum in which they may bring their disputes. First, the "no automatic forfeiture" provision expressly limits the plaintiffs' right to bring a civil forfeiture action, and as a negative statement of rights does not imply a right to seek a civil action for forfeiture of the lease. Second, the "force majeure" provision simply references "orders" without implying that such orders issue from a court. Third, the "severability" provision simply contemplates a court's invalidation of a single provision (for example the arbitration agreement), without mentioning how the court came to do so.[3] In short, none of these provisions imply the

---

[3]This Court notes that the most probable scenarios are those in which a court finds the arbitration agreement to be invalid in an action to compel arbitration, or where an arbitral award declares a provision to be invalid and the award is reduced to a judgment when the parties seek to enforce the award under § 9 of the FAA. Either way, the severability provision does not necessarily contemplate a civil action that is in conflict with the "all disputes" language in the arbitration agreement.

availability of a civil action in light of the "all disputes" language in the arbitration agreement.

Thus, after reading all of the provisions together, this Court finds that the arbitration agreement is not ambiguous based on either the limitation of forfeiture provision, the severability provision, or the force majeure provision. <u>See</u> <u>Legg v. Johnson, Simmerman & Broughton, L.C.</u>, 576 S.E.2d 532, 537 (W. Va. 2002) ("'The meaning of a word is to be considered in the context in which it is employed. The meaning of a word thus is to be ascertained from a reading of the entire contract, rather than from a consideration of that one word alone . . . .") (quoting 17A C.J.S. <u>Contracts</u> § 318 (1999)).

### b. <u>Class Arbitration</u>

The arbitration defendants argue that the plaintiffs must submit to bilateral arbitration, rather than class arbitration because the parties did not expressly agree to class arbitration. The plaintiffs argue that the question of the availability of class arbitration is arbitrable, and that if it is not, the arbitration agreement contemplates class arbitration.

### (1) <u>Arbitrability of Consent to Class Arbitration</u>

This Court must first determine whether the availability of class arbitration is a question of arbitrability or of procedure, as questions of arbitrability are determined by this Court while questions of procedure are determined by the arbitrator. <u>Peabody</u>

Holding Co. v. United Mine Workers of Am., 665 F.3d 96, 102 (4th Cir. 2012) (citing AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986); Dockser v. Schwartzberg, 433 F.3d 421, 426 (4th Cir. 2006)). Arbitrability issues involve gateway questions about whether the parties agreed to arbitrate a particular dispute. Id. Parties may agree to submit questions of arbitrability to an arbitrator by clearly and unambiguously stating so in the arbitration agreement. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995).

The Supreme Court has not directly dealt with the question of whether consent to class arbitration is arbitrable. However, the Court's most recent decisions on class arbitration in Stolt-Neilsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662 (2010), and Oxford Health Plans, LLC v. Sutter, 133 S. Ct. 2064 (2013), indicate that consent to class arbitration cannot be "a procedural matter because the class-action construct wreaks 'fundamental changes' on the 'nature of arbitration.'" Cent. W. Va. Energy, Inc. v. Bayer Cropscience LP, 645 F.3d 267, 274-75 (4th Cir. 2011) (quoting Stolt-Neilsen, 559 U.S. at 689). The Fourth Circuit Court of Appeals has not conclusively weighed in on the issue either. See id. at 274-75 (noting that the issue before the court did not involve class arbitration, but rather parallel arbitration before two arbitral panels). However, in dicta, the court indicated that

the issue is one of arbitrability. See id. at 275-76 (stating that consent to class arbitration is not "a procedural matter").

The Sixth and Third Circuits have both definitively held that "the availability of class arbitration is a question of arbitrability." Opalinski v. Robert Half Int'l Inc., 761 F.3d 326, 335 (3d Cir. 2014); see also Reed Elsevier, Inc. v. Crockett, 734 F.3d 594, 599 (6th Cir. 2013) ("[T]he question whether an arbitration agreement permits classwide arbitration is a gateway matter, which is reserved for judicial determination unless the parties clearly and unmistakably provide otherwise."). Both courts relied on the Supreme Court's reasoning in Stolt-Neilson and Oxford Health Plans that class arbitration fundamentally changes the nature and expected benefits of arbitration. See Opalinski, 761 F.3d at 334-35; Reed Elsevier, 734 F.3d at 598. This Court likewise concludes that class arbitration raises significant due process issues regarding absent parties, lack of procedural efficiency, heightened commercial stakes, and issues of confidentiality. See Chesapeake Appalachia, LLC v. Suppa, 1:14CV159, 2015 WL 966326, *8 (N.D. W. Va. Mar. 4, 2015). As such, this Court concludes that the issue of whether the parties consented to class arbitration is a question of arbitrability, presumptively decided by this Court. See id.

A party may rebut the presumption of judicial determination by presenting evidence that the arbitration agreement clearly and

unmistakably contemplated the arbitrators determining arbitrability issues. See AT&T Techs., 475 U.S. at 649 ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). The plaintiffs argue that the arbitration agreement does evidence the parties' intent to submit to class arbitration for two reasons.

First, the plaintiffs argue that the broad "all disputes" language of the arbitration agreement includes issues of arbitrability, as those are disputes arising out of the contract. However, the arbitration agreement does not clearly and unmistakably assign to an arbitrator the question of whether the parties consented to class arbitration. See Reed Elsevier, 734 F.3d at 599-600 (concluding that a broad "any controversy" arbitration agreement did not clearly and unmistakably submit the issue of whether class arbitration was available to the arbitrator). Nor does it even "suggest[] that the parties agreed to submit questions of arbitrability to the arbitrator." Opalinski, 761 F.3d at 335. The broad "all disputes" language alone does not indicate the parties' intent to submit issues of arbitrability to the arbitrator.

Second, the plaintiffs argue that the arbitration agreement's reference to the AAA rules evidences their intent to submit arbitrability issues to arbitration because the AAA rules vest the

arbitrator with the authority to decide such issues. The plaintiffs rely on Chesapeake Appalachia, LLC v. Burkett, Civil Action No. 3:13-3073, 2014 WL 5312829 (M.D. Pa. Oct. 17, 2014), in which the court concluded that a reference to the AAA rules "constitute[d] clear and unmistakable evidence that the parties agreed to arbitrate issues of arbitrability," including class arbitration. Id. at *6-7. The Burkett court relied on a set of Circuit Court cases that each determined that incorporation of the AAA rules constituted clear and unmistakable evidence that the parties agreed to arbitrate issues of arbitrability. Id. at *6. However, all of those cases involved bilateral arbitration and did not deal with whether the availability of class arbitration was arbitrable. See Oracle Am., Inc. v. Myriad Grp. A.G., 724 F.3d 1069, 1071-72, 1074 (9th Cir. 2013); Petrofac, Inc. v. DynMcDermott Petroleum Operations Co., 687 F.3d 671, 673-74, 675 (5th Cir. 2012), Fallo v. High-Tech Inst., 559 F.3d 874, 876-77, 878 (8th Cir. 2009); Qualcomm Inc. v. Nokia Corp., 466 F.3d 1366, 1368-69, 1373 (Fed. Cir. 2006); Terminix Int'l Co. v. Palmer Ranch LP, 432 F.3d 1327, 1329-30, 1332 (11th Cir. 2005); Contec Corp. v. Remote Solution Co., 398 F.3d 205, 207, 208 (2d Cir. 2005). "Using bilateral arbitration dispute case law to make a decision in a classwide arbitration dispute case completely ignores the undergirding of . . . Opalinski" and Reed Elsevier. Chesapeake Appalachia, LLC v. Scout Petroleum, LLC, 73 F. Supp. 3d 488, 500

(M.D. Pa. 2014). Because "the class-action construct wreaks 'fundamental changes' on the 'nature of arbitration,'" <u>Cent. W. Va. Energy</u>, 645 F.3d at 274-75 (quoting <u>Stolt-Neilsen</u>, 559 U.S. at 689), the agreement must include "express contractual language" submitting the availability of class arbitration to the arbitrator. <u>Opalinski</u>, 761 F.3d at 335. Anything less "is not enough to wrest that decision from the courts." <u>Reed Elsevier</u>, 734 F.3d at 599 (citing <u>Stolt-Nielsen</u>, 559 U.S. at 684-85).

Considering the arbitration agreement's language and the reference to the AAA rules, this Court is unconvinced that the parties intended to submit to the arbitrator the question of whether class arbitration is available. The agreement does not mention class arbitration or arbitrability. Its reference to the AAA rules is the only link to the submission of arbitrability issues to the arbitrator. "[A]t best, the agreement is silent or ambiguous as to whether an arbitrator should determine the question of classwide arbitrability; and that is not enough to wrest that decision from the courts." <u>Reed Elsevier</u>, 734 F.3d at 599 (citing <u>Stolt-Nielsen</u>, 559 U.S. at 684-85). Therefore, this Court finds that the parties did not intend to submit arbitrability issues to the arbitrator.

### (2)  Consent to Class Arbitration

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not

agreed so to submit." AT&T Techs., 475 U.S. at 648 (internal quotation marks omitted). "[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." Stolt-Nielsen, 559 U.S. at 684 (emphasis in original).

The plaintiffs rely on Oxford Health Plans to argue that the arbitration agreement need not expressly reference class proceedings for the parties to have submitted to such proceedings. In that case, the parties submitted to arbitration, and the arbitrator determined that the arbitration agreement contemplated class arbitration despite not expressly mentioning class arbitration. Id. at 2067-68. The plaintiffs argue that because the Supreme Court concluded that the arbitrator did not exceed his powers in authorizing class arbitration, id. at 2069, the Court established a rule of law that express reference to class arbitration is not necessary for the parties to consent to it. However, the key to the Oxford Health Plans decision is its procedural posture. The Court was facing a motion to vacate the arbitral award, and the parties did not contest that the availability of class arbitration was arbitrable. Id. at 2068. The Court considered the narrow question of whether § 10(a)(4) of the FAA allows a court to vacate an arbitral award based on the arbitrator's determination that the parties consented to class arbitration. Id. Section 10(a)(4) allows a court to vacate an

arbitral award "where the arbitrator[] exceeded [his] powers," 9 U.S.C. § 10(a)(4), but not when the arbitrator commits even serious error. Oxford Health Plans, 133 S. Ct. at 2068. The Court concluded that the arbitrator did not abuse his power in "( . . . arguably) interpreting the parties' contract." Id. at 2068, 2071. Thus, Oxford Health Plans reinforces the high burden a party has in seeking to vacate an award, but says nothing about how a court should interpret an arbitration clause. Courts must interpret the arbitration agreement as they would any contractual term to determine whether the parties agreed to class arbitration.

Here, the arbitration agreement does not indicate that the parties consented to class arbitration. As discussed above, the arbitration agreement does not mention class arbitration. In fact, the arbitration agreement is put in terms of bilateral disputes "between Lessor and Lessee concerning this Lease." ECF No. 1 Ex. D. Therefore, this Court finds that the parties did not consent to class arbitration but only to bilateral arbitration.

C.  Motion to Stay Pending Arbitration

Chesapeake Exploration, LLC, Deutsche Bank Trust Company Americas, P. Nathan Bowles, Jr., Esq., Chris Turner, and Kenyon Energy, LLC (collectively "the remaining defendants") moved this court to stay the proceedings against them pending arbitration. Alternatively, the remaining defendants request that this Court

compel the claims against them to arbitration along with the plaintiffs and the arbitration defendants.

When an action subject to arbitration is filed, § 3 of the FAA provides that a court "shall on application of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

Although this does not directly apply to parties to the action that are not subject to the arbitration agreement, "it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 n.23 (1983); see also Am. Home Assurance Co. v. Vecco Concrete Constr. Co., Inc. of Va., 629 F.2d 961, 964 (4th Cir. 1980) ("While it is true that the arbitrator's findings will not be binding as to those not parties to the arbitration, considerations of judicial economy and avoidance of confusion and possible inconsistent results nonetheless militate in favor of staying the entire action.").

The plaintiffs' claims against the remaining defendants revolve around the issues to be arbitrated between the plaintiffs and the arbitration defendants. Thus, this Court finds that staying the action against the remaining defendants will serve the

interests of judicial economy and of avoiding duplicative proceedings.

## V. <u>Conclusion</u>

For the reasons set forth above, defendants Chesapeake Appalachia, LLC and CHK Utica, LLC's motion for leave to file excess pages and motion to compel bilateral arbitration is GRANTED; the plaintiffs' motion to strike the defendants' motion for leave to file excess pages is DENIED; and defendants Chesapeake Exploration, LLC, Deutsche Bank Trust Company Americas, P. Nathan Bowles, Jr., Chris Turner, and Kenyon Energy, LLC's motion for stay pending arbitration is GRANTED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    September 1, 2015


<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE